UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MORTEZA PARANDIAN AND
SOUDABEH PARANDIAN

CIVIL ACTION

VERSUS

NO. 12-476-RLB

GREAT WEST CASUALTY
COMPANY, CHRISTOPHER
NDUNGU AND WELMAR EXPRESS

CONSENT

## RULING

Before the Court is Plaintiff Morteza Parandian's "Rule 59 Motion to Alter or Amend the Judgment or in the Alternative Motion for a New Trial." (R. Doc. 56) ("Motion"). Defendants Great West Casualty Company, Christopher Ndungu, and Welmar Express oppose the Motion. (R. Doc. 57). For the reasons set forth below, Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

This automobile accident lawsuit was originally brought in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, and subsequently removed to this court pursuant to diversity jurisdiction. (R. Doc. 1-1). In his Petition, Plaintiff alleged that on the morning of April 18, 2012, he was stopped at a red light in his 2001 Nissan Altima at an intersection of East Boyd Street and Burbank Drive in Baton Rouge. (R. Doc. 1-6 at 1-2). Plaintiff alleged that defendant Christopher Ndungu turned left from Burbank Drive onto East Boyd Street in a 2001 Freightliner tractor/trailer rig in the course and scope of his employment with the rig's owner, defendant Welmar Express. (R. Doc. 1-6 at 2). The back tires of the rig allegedly struck the driver's side of Plaintiff's vehicle, causing property damage to the vehicle and personal injuries to Plaintiff. (R. Doc. 1-6 at 2-3). Plaintiff alleged that his personal injuries

"have required continued medical treatment" and have caused him "to incur past and future medical expenses and to suffer past and future physical pain and suffering, past and future mental anguish pain and suffering, loss of enjoyment of life, economic loss, loss of economic capacity, and other losses." (R. Doc. 1-6 at 3-4).

Defendants stipulated to liability for the accident. (R. Doc. 45). Accordingly, the threshold issue at trial was whether Plaintiff suffered personal injuries or damages that were attributable to the accident.

After a three-day trial, the jury rendered a verdict in Defendants' favor finding that the preponderance of the evidence did not support a finding that Plaintiff's personal injuries were proximately caused by the accident. (R. Doc. 54).

Plaintiff filed the instant Motion arguing that the jury was prejudiced against him and disregarded all medical evidence presented. (R. Doc. 56-1 at 1). It is undisputed that Plaintiff did not object (or otherwise bring to the attention of the Court) that any juror was inattentive during the trial in any manner. It is also undisputed that the race / ethnicity of the Plaintiff was raised during the trial by Plaintiff's counsel during his opening statement and never argued or suggested by the defense as a basis for finding in their favor.

## II. LAW AND ANALYSIS

### A. Motion to Alter or Amend Judgment

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion to alter or amend the judgment "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. *Templet v.*

*HydroChem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Instead, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989) (internal quotations omitted)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. This Court may properly decline to consider new arguments or new evidence on reconsideration where those arguments were available to the movant prior to the Order and Judgment. *Id.* at 478-79.

Plaintiff fails to argue or allege that the Court has committed a manifest error of law or that Plaintiff has newly discovered evidence to submit. Plaintiff's arguments focus on the validity of a jury verdict and alleged jury misconduct. Accordingly, the Court will deny Plaintiff's motion to the extent he seeks to alter or amend the judgment.

B.  **Alternative Motion for New Trial**

Jurisdiction in this case is based on diversity of citizenship between the parties. Neither party, however, addresses whether state or federal law provides the standard for reviewing the sufficiency of the evidence on a Rule 59 motion.[1] The Supreme Court in *Gasperini v. Center for*

---

[1] If applying federal law after a jury trial, Rule 59(a) of the Federal Rules of Civil Procedure permits the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). It is within the "sound discretion of the trial court" to determine whether to grant or deny a motion for new trial. *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). Although the rule does not specify the exact grounds for granting a new trial, Rule 59(a) allows a court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citing *Reed Bros., Inc. v. Monsato Co.*, 525 F.2d 486, 499-50 (8th Cir. 1975)).

Ultimately, the court must view the evidence in "a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores*, 978 F.2d 205, 208 (5th Cir. 1992) (citing *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 987 (5th Cir. 1989)).

3

*Humanities*, 518 U.S. 415, 419 (1996) held that, in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy. *See Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012) (applying *Gasperini* and recognizing its effect on prior decisions). District courts in this circuit have applied Louisiana law to a defendant's "challenge to the adequacy of the evidence in its Rule 59 motion." *See Body By Cook v. Ingersoll-Rand Co.*, No. 13-175, 2014 WL 4064022, at *12 (E.D. La. Aug. 15, 2014).

The Louisiana Supreme Court has cautioned that the trial court's discretion in granting new trials is limited:

> The fact that a determination on a motion for new trial involves judicial discretion . . . does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.

*Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 93 (La. 2000) (emphasis and citations omitted).

The Fifth Circuit has explained that "[d]espite permitting a trial court to review the jury's credibility determinations, Louisiana gives the jury high deference. . . [and] provides a new trial '[w]hen the verdict or judgment appears clearly contrary to the law and the evidence' . . .When granting a new trial, the court can evaluate the evidence, draw its own inferences and conclusions, and determine whether the jury 'erred in giving too much credence to an unreliable

---

As set forth in this ruling, the Court has determined that under Louisiana law a new trial should not be granted. For those same reasons, the Court reaches the same result if applying the federal standard.

witness.' Yet, Louisiana courts still accord jury verdicts great deference." *Fair v. Allen*, 669 F.3d at 605 (internal citation omitted).

Plaintiff argues that he is entitled to a new trial because the evidence presented at trial could not support the jury's verdict. The first question on the jury verdict form asked the following question: "Do you find by a preponderance of the evidence that Morteza Parandian suffered injuries that were proximately caused by the accident with the 18 wheeler on April 18, 2012?" (R. Doc. 54 at 1). The jury selected the answer "No." (R. Doc. 54 at 1).

Plaintiff contends that, contrary to the jury's determination, the medical evidence presented by his expert witnesses established that his injuries resulted from the accident. Plaintiff specifically argues that this verdict was reached in error because "through his own testimony and uncontroverted medical evidence" he established a "reasonable probability" that there was a "causal connection between the accident and [his] condition," and Defendants did not overcome the presumption that his injuries were caused by the accident. (R. Doc. 56-1 at 2). Plaintiff claims that he is entitled at least to an award for damages for "a new neck injury and aggravation of a pre-existing back injury." (R. Doc. 56-1 at 3).

Plaintiff relies primarily on the testimony of his two treating neurosurgeons, Dr. Gerald Molly and Dr. Horace Mitchell, in support of a finding that his injuries were proximately caused or aggravated by the accident. Plaintiff had pre-existing injuries including a surgical recommendation prior to the incident in this case. Although these doctors testified that Plaintiff's injuries could have been caused or aggravated by the accident, those medical opinions were based, in part, on the veracity of the information provided by the Plaintiff. Dr. Molly testified that his opinion that Plaintiff's cervical disease was complicated by the accident was dependent upon the existence or non-existence of "cervical complaints" by Plaintiff in the past;

5

Plaintiff's subjective descriptions regarding his strength in the past; and whether Plaintiff sought care for his cervical spine in the past. (R. Doc. 56-1 at 4). Similarly, Dr. Mitchell's medical opinion was based in part on Plaintiff's own subjective complaints. (R. Doc. 56-1 at 6).

In essence, the medical testimony offered by Plaintiff relied, in part, on a credibility determination, i.e., whether Plaintiff's subjective complaints of additional pain and injuries after the accident are credible. "The weight afforded a treating physician's testimony is largely dependent upon the facts upon which his opinion is based." *Green v. Thompson Home Health*, 73 So. 3d 490, 494 (La. App. 2 Cir. 2011) (citing *Perow v. Lenzly*, 716 So. 2d 519 (La. App. 2d Cir. 1998)). Plaintiff's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. *Id*. (citing *Bass v. Allstate Ins. Co.*, 750 So. 2d 460, 467 (La. App. 2 Cir. 2000); *Perow*, 716 So. 2d 519). The jury could find little weight in the medical opinions of Plaintiff's treating physicians because their conclusions are based on a false premise—that Plaintiff experienced additional post-accident pain and injuries. Furthermore, it is for the jury to evaluate the whether to believe the testimony of Plaintiff's treating physicians regardless of whether the expert opinion is hinged upon facts provided by Plaintiff. *See Lirette v. State Farm Ins. Co.*, 563 So. 2d 850, 853 (La. 1990) ("The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.").

Based on the evidence provided at trial, including Plaintiff's own testimony, a reasonable jury could find Plaintiff's subjective complaints regarding additional pain after the accident as unbelievable. Plaintiff presented testimony that his injuries were essentially debilitating, despite contrary evidence showing that Plaintiff was capable of a wide-range of physical activity that was completely inconsistent with his representations and testimony regarding the scope and

severity of his pain. Plaintiff's testimony, and that of his wife, was simply not credible. The jury was able to view the Plaintiff during his cross examination when confronted with these inconsistencies and observe his demeanor. It would have been reasonable for the jury to conclude that Plaintiff experienced no additional pain or injuries as a result of the accident. Based on these conclusions, in addition to any independent credibility determinations of the expert witnesses themselves, the jury reasonably could have concluded that the medical opinions offered regarding proximate cause should be given diminished or little weight. As it was the Plaintiff's burden of proof at trial, such a conclusion by the jury could, and apparently did, result in a finding that Plaintiff had not proved his case. Essentially, Plaintiff is dissatisfied with the jury's weighing of evidence and determination of his credibility. As recently stated by the Fifth Circuit, "mere dissatisfaction with the jury's weighing of evidence or determination of witness is not a valid ground on which to grant . . . a new trial." *Bovie-Clark v. Sentry Select Ins. Co.*, 568 F. App'x 312, 313 (5th Cir. 2014).

Based on the foregoing, there was sufficient evidence presented at trial demonstrating that the Plaintiff's injuries were not proximately caused by the accident. The medical opinions of Dr. Molly and Dr. Mitchell were premised, in part, on plaintiff's own testimony regarding the scope and extant of his injuries before and after the accident. The jury could reach its verdict by finding Plaintiff's testimony regarding his post-accident neck and back pain to be unbelievable. The jury verdict did not go against the weight of the evidence presented and that verdict is supported by a fair interpretation of the evidence.

Plaintiff also argues that he is entitled to a new trial because the jury was prejudiced in light of his Middle Eastern heritage, and acted upon that prejudice by not paying attention during the trial and by ignoring the evidence in reaching its verdict.

7

Foremost, Plaintiff has not directed the Court to any specific instance of any behavior by the jury, defendant, opposing counsel, or the court that evidences any prejudice or bias against Plaintiff in light of his Middle Eastern heritage. Plaintiff raised no objection during the trial concerning any perceived prejudice or bias. In fact, as pointed out by Defendants, Plaintiff's Middle Eastern heritage was mentioned by Plaintiff's own counsel during his opening statement and never offered as a basis for prejudice against him.

Despite the absence of any perceivable prejudice or bias regarding Plaintiff's race or ethnicity, Plaintiff claims that this prejudice or bias against him manifested itself through (1) juror inattentiveness during the trial and (2) disregard of the evidence during deliberations.

First, Plaintiff argues that he was deprived of a fair trial because he alleges that one juror was sleeping during "about 90% of the trial" and another juror was "looking around the courtroom" and therefore "oblivious to the testimony presented on the witness stand." (R. Doc. 56-1 at 1, 7). Regardless of whether Plaintiff is arguing that the alleged juror inattentiveness was a manifestation of prejudice or general apathy, what is clear is that during the course of the trial neither party alerted the Court that a juror was sleeping or otherwise inattentive. Frequent breaks were taken during the trial and there was no indication that any juror was ever unresponsive or unable to proceed with the responsibilities of serving on the jury. The record also supports a conclusion that the jurors engaged in thoughtful and thorough deliberations, reflecting a deliberate consideration of all of the evidence presented at trial. (R. Doc. 51) (jury deliberated for over 4 hours). There is no indication that any juror lacked any capacity to appropriately render and just and impartial verdict.

The instant motion is the first time, in any context, that Plaintiff has raised this issue, despite his unsubstantiated assertion that it occurred during the vast majority of the proceeding.

To the extent Plaintiff claims that he is entitled to a new trial based on juror inattentiveness, that juror misconduct claim was waived because counsel did not raise this issue until after the conclusion of trial and entry of the verdict. *See United States v. Rivera*, 295 F.3d 461, 470 (5th Cir. 2002) (holding that juror misconduct claims based on juror inattentiveness is waived if defense counsel does not raise the issue when it is first noticed) (citing *United States v. Curry*, 471 F.2d 419, 422 (5th Cir. 1973); *United States v. Baker*, 609 F.2d 134, 139 (5th Cir. 1980)); *Cummings v. Dept. of Corrections*, 757 F.3d 1228, 1235 (11th Cir. 2014) (a motion for new trial based on alleged jury misconduct "is not a vehicle for sandbagging an opposing party after the jury returns an unfavorable verdict").

Second, Plaintiff argues that he was deprived of a fair trial because the jury allegedly ignored evidence supporting a contrary verdict. Plaintiff claims that the Plaintiff's disregard of the evidence is substantiated by three questions asked during the jury's deliberations:

1. Has Mr. Parandian been compensated for <u>anything</u> thus far from defendants?

2. Has any medical bills been paid by anyone? (SSI, Medicare, Defendants)

3. If an individual receives SSI, are they able to hold a job and receive income? Evidence in Exhibit 8 shows that on 10/30/13, that Mr. Parandian was "stuck at work", will call tomorrow r/s.

(R. Doc. 56-1 at 2). Plaintiff claims that the fact the jury asked these questions proves "that the jury chose to ignore evidence and apply their own brand of injustice." (R. Doc. 56-1 at 1). The Court disagrees. First, the jury was instructed to only consider the evidence admitted at the trial, and therefore had nothing to consider, improperly or not, regarding any payment from any collateral source. Second, these questions have no bearing on the jury's ultimate finding that Plaintiff had not established, by a preponderance of the evidence, that he "suffered injuries that were proximately caused by the accident with the 18 wheeler on April 18, 2012." (R. Doc. 54 at

9

1). The jury did not reach the issue of awardable damages because they found that there was no causal link between Plaintiff's alleged personal injuries and the accident. Finally, that the jury took the time to review and consider all of the evidence is not a ground to discard the verdict. Furthermore, as discussed in detail above, the jury's verdict is supported by the jury's credibility determinations and the evidence in the record. Accordingly, the Court concludes that the fact the jury asked certain questions regarding recoverable damages does not support a conclusion that they deliberately ignored evidence in the record in light of prejudice or bias to Plaintiff based on his race or ethnicity.

Accordingly, plaintiff's motion for new trial must be denied.

## III. CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion (R. Doc. 56) is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 22, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**